**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **NICOLE DANIELLE STOTLER, *et al.*,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Action No. EA-26-2096** |
| **NISSAN NORTH AMERICA, INC.,** | * | |
| **Defendant.** | * | |

## MEMORANDUM OPINION

On May 27, 2026, Plaintiffs Nicole Danielle Stotler and Jeremy G. Stotler (collectively, the Stotlers) filed suit against Defendant Nissan North America, Inc. (Nissan) alleging violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., and Maryland statutory and common law related to an allegedly defective motor vehicle. ECF No. 1. Pending before the Court is Nissan's motion to dismiss or to strike the Stotlers' request for punitive damages. ECF No. 16. The motion is fully briefed and no hearing is necessary. ECF Nos. 16–18; Local Rule 105.6 (D. Md. Dec. 1, 2025). For the reasons set forth below, the motion is granted.

## I. BACKGROUND[1]

On May 22, 2024, Nicole Stotler purchased a new 2024 Nissan Frontier (the Vehicle) from a Nissan dealership in Frederick, Maryland. ECF No. 1 ¶ 5. "Almost immediately after purchase the Vehicle began exhibiting serious, recurring defects." *Id.* at ¶ 7. On August 26, 2024, the Stotlers took the Vehicle to a Nissan dealership in Morgantown, West Virginia, "because the check engine light was on solid." *Id.* The dealer ordered parts but then informed the Stotlers that it "wanted nothing to do with the truck, that the vehicle was dangerous, and that it needed to be towed." *Id.* The Vehicle was then towed to Timbrook

---

[1] This factual summary is drawn from the allegations in the Complaint (ECF No. 1), which are accepted as true for the purposes of this motion. *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Nissan in Cumberland, Maryland. *Id.* From August 28, 2024, through September 12, 2024, Timbrook Nissan performed a series of repairs on the Vehicle. *Id.*

The defects continued into 2025. *Id.* at ¶ 8. Between May 7, 2025, and August 15, 2025, the "NissanConnect telematics system" transmitted more than thirty "veh. malf." warnings to the Stotlers, forcing them to have the Vehicle towed at least three times. *Id*. (bold removed). On August 4, 2025, the Stotlers brought the Vehicle to another Nissan dealership for an oil change. *Id.* at ¶ 9. The check engine light was again illuminated. *Id.* The dealer advised the Stotlers that "they honestly did not know what was really wrong with the Vehicle" and that the Vehicle was "safe to drive." *Id.* The dealer told the Stotlers that they would be notified when the replacement "O2 sensor" arrived, but "they did not know if replacing the O2 sensor would fix the problem." *Id.*

On August 11, 2025, at 6:41 pm, the Vehicle received another NissanConnect telematics warning, which indicated that the Vehicle "may have an emission control system malfunction." *Id.* at ¶ 10. The warning advised that "[i]f the Malfunction Indicator Light (MIL) is blinking, you may have a misfire or other component malfunction." *Id.* The warning instructed that speed should be limited to 45 miles per hour, hard acceleration or deceleration and steep uphill grades should be avoided, and the amount of cargo being hauled or towed should be reduced. *Id.* At 6:54 pm, "the Vehicle's electrical and powertrain systems suddenly and catastrophically failed." *Id.* at ¶ 11. "Mr. Stotler was unable to control the Vehicle, which ran off the roadway, left the shoulder, and crashed into a ditch." *Id.* As a result, "Mr. Stotler sustained a concussion and other serious physical injuries." *Id.* at ¶ 12.

After the occurrence, the Stotlers "formally demanded that Nissan inspect the Vehicle and resolve the warranty claim." *Id.* at ¶ 14. "Nissan engaged in a pattern of deliberate delay and obstruction." *Id.* The Stotlers made several attempts to have the Vehicle inspected before finally scheduling an inspection on March 12, 2026. *Id.* After the inspection, "Nissan failed to provide an update on the warranty claim for at least a month, despite multiple

follow-up inquiries." *Id.* On August 22, 2025, a diagnostic scan of the Vehicle "revealed multiple trouble codes consistent with the . . . defects." *Id.* at ¶ 15. For example, the odometer reported inconsistent mileage (2,501 and 25,001). *Id.* The Stotlers assert that this discrepancy, together with Nissan's post-occurence "pattern of delay and obstruction," supports "a reasonable inference that Nissan sought to minimize or conceal evidence of the defect." *Id.* On April 13, 2026, "Nissan issued a formal denial, stating there was no evidence of any manufacturing or product defect." *Id.* at ¶ 16 (internal quotation marks omitted). On May 8, 2026, a certified mechanic performed a new diagnostic scan, which revealed codes "across the same critical systems," and during a "test drive the Vehicle stalled in a manner nearly identical to the August 11, 2025 crash, almost causing another accident." *Id.* at ¶ 17.

In their Complaint, the Stotlers plead seven counts, including violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; the Maryland Automotive Warranty Enforcement Act, Md. Code Ann., Com. Law § 14-1502; the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301; and claims for breach of express and implied warranties, strict products liability, and negligence. ECF No. 1 ¶¶ 19–42. Among other remedies, the Stotlers seek punitive damages. *Id.* at 11-12.[2] In support of punitive damages, the Stotlers allege that "Nissan's conduct demonstrates actual malice" because, among other things, "[f]or more than a year Nissan had actual knowledge of the chronic defects through its own telematics system," "multiple dealer repair attempts," and "its dealers' service records." *Id*. The Stotlers further contend that Nissan's "pattern of obstruction" following the occurrence, "together with the pre-crash telematics warnings and post-crash diagnostic discrepancies . . . supports a plausible inference that Nissan consciously disregarded the substantial risk of further harm to Plaintiffs and the public." *Id.* at 12.

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

## II. DISCUSSION

Nissan moves to dismiss the Stotler's request for punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to strike the request pursuant to Rule 12(f) on the grounds that the Stotlers fail to sufficiently allege actual malice. ECF Nos. 16; 16-1 at 1, 9-12. The Stotlers argue the opposite and, alternatively, seek leave to amend their Complaint. ECF No. 17-1 at 10-13. Following discussion of the applicable standards of review, the parties' arguments are addressed below.

### A. Standards of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards* v. *City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)-(3). This pleading standard is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). A complaint does not need "detailed factual allegations" to satisfy the Rule 8 pleading standard, but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. When evaluating a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw reasonable inferences from the facts in favor of the plaintiff to determine if the plaintiff is entitled to the relief sought. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The same does not hold true for legal conclusions. *Id*.; *Twombly*, 550 U.S. at 555-556. Thus, "a plaintiff armed with nothing more than conclusions" has not satisfied the Rule 12(b)(6) standard. *Iqbal*, 556 U.S. at 678-679.

The case law in this District regarding dismissal of punitive damages on a Rule 12(b)(6) motion is mixed. In some instances, this Court has declined to dismiss requests for punitive damages on a Rule 12(b)(6) motion, reasoning that Rule 12(b)(6) addresses the "failure to state a claim" and punitive damages are not an independent claim, but rather a form of relief. Fed. R. Civ. P. 12(b)(6); *Halsey* v. *Harbor Freight Tools USA, Inc.*, Civil Action No. ELH-25-248, 2025 WL 2406398, at *5 (D. Md. Aug. 18, 2025); *Doe* v. *Mercy High Sch., Inc.*, Civil Action No. JRR-23-1184, 2024 WL 3103396, at *27 (D. Md. June 24, 2024); *Aarow Elec. Sols.* v. *Tricore Sys., LLC*, Civil Action No. JKB-22-2363, 2024 WL 1443743, at *4 (D. Md. Apr. 3, 2024). Other decisions have dismissed requests for punitive damages where such relief is not plausibly alleged. *E.g.*, *Stern* v. *Western Express, Inc.*, Civil Action No. JRR-25-3545, 2026 WL 2581608, at *5 (D. Md. Sept. 1, 2026); *Wooten* v. *Boppy Co., LLC*, Civil Action No. MJM-23-2695, 2024 WL 3819134, at *8 (D. Md. Aug. 14, 2024); *Mendez* v. *General Motors, LLC*, Civil Action No. JMC-22-853, 2022 WL 2333851, at *3-4 (D. Md. June 28, 2022); *Harris* v. *Dow Chem. Co.*, Civil Action No. DKC-20-988, 2020 WL 6874326, at *3 (D. Md. Nov. 23, 2020). While "there is no *heightened* pleading standard . . . malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated."[3] *Mayfield* v. *National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012). The undersigned concurs that "[w]here a complaint purports to seek a form of relief such as punitive damages but does not allege facts that, if true, would entitle the plaintiff to that form of relief, a Rule 12(b)(6) motion is an appropriate vehicle to move that a request for such relief be dismissed or stricken at the pleadings stage."[4] *Marion* v. *Anchor Hocking, LLC*, 792 F. Supp. 3d 629, 633 (D. Md. 2025).

---

[3] This Court looks to Maryland law to determine if punitive damages are available, but applies Federal Rule of Civil Procedure 8 to determine if the pleading requirements have been satisfied. *Marion* v. *Anchor Hocking, LLC*, 792 F. Supp. 3d 629, 633 (D. Md. 2025).

[4] This Court has also recognized that that "dismissal of a punitive damages request is appropriate where the claim upon which that request is premised has been dismissed or where

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "When reviewing a motion to strike, the court must view the pleading under attack in a light most favorable to the pleader." *Piontek* v. *Service Centers Corp.*, Civil Action No. PJM 10-1202, 2010 WL 4449419, at *3 (D. Md. Nov. 5, 2010) (internal quotation marks and citation omitted). "The United States Court of Appeals for the Fourth Circuit notes that Rule 12(f) motions are generally disfavored because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Hanson* v. *Hanson*, Civil Action No. GLR-19-2214, 2020 WL 4734313, at *2 (D. Md. Aug. 14, 2020) (internal quotation marks and citation omitted). Nevertheless, "[i]f a plaintiff fails to properly support a request for punitive damages, the court may strike the request." *McMillan* v. *Kansas City Life Ins.*, Civil Action No. ELH-22-1100, 2023 WL 3901279, at *7 (D. Md. June 7, 2023); *accord Mitchell* v. *Lydall, Inc.*, 16 F.3d 410 (Table), 1994 WL 38703, at *4 (4th Cir. Feb. 10, 1994); *Hanson*, 2020 WL 4734313, at *3; *Jaffee* v. *Plough Broad. Co.*, Civil Action No. H-78-1254, 1979 WL 172, at *2 (D. Md. Mar. 2, 1979).

**B. Punitive Damages**

"Punitive damages compensate the plaintiff for 'the heinous nature of the defendant's tortious conduct,' punish the defendant for that conduct, and hopefully help to deter others from engaging in similar conduct." *Halsey*, 2025 WL 2406398, at *3 (quoting *Owens-Illinois, Inc.* v. *Zenobia*, 325 Md. 420, 454 (1994) (*Zenobia*)). Unlike compensatory damages, which serve "to make the injured plaintiff whole," *King* v. *McMillan*, 594 F.3d 301,

---

the claim cannot support a request for punitive damages." *Aarow Elec. Sols.* v. *Tricore Sys., LLC*, Civil Action No. JKB-22-2363, 2024 WL 1443743, at *4 n.2 (D. Md. Apr. 3, 2024). Neither of those situations applies here as the motion relates to the nature of the relief sought, not the Stotlers' claims, which remain pending and have the potential to support an award of punitive damages. *E.g.*, *Halsey* v. *Harbor Freight Tools USA, Inc.*, Civil Action No. ELH-25-248, 2025 WL 2406398, at *4 (D. Md. Aug. 18, 2025) ("A plaintiff 'is permitted to seek punitive damages for product liability claims.'") (quoting *Marion*, 792 F. Supp. 3d at 632).

314 (4th Cir. 2010), punitive damages serve the "dual purposes of deterrence and retribution," *Daugherty* v. *Ocwen Loan Servicing, LLC*, 701 Fed. Appx. 246, 258 (4th Cir. 2017); *see also Anne Arundel Cnty.* v. *Reeves*, 474 Md. 46, 66 (2021) ("Punitive damages are designed to . . . punish the wrongdoer for particularly egregious or heinous conduct and to deter others from following suit."). Punitive damages are available only when "the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud." *Zenobia*, 325 Md. at 460. "Thus, to be entitled to an award of punitive damages, Plaintiff must sufficiently allege that Defendant committed the underlying tort with actual malice." *Stern* v. *Western Express, Inc.*, Civil Action No. JRR-25-3545, 2026 WL 2581608, at *4 (D. Md. Sept. 1, 2026).

As Maryland's highest court has observed, "actual malice . . . does not translate easily into products liability cases." *Zenobia*, 325 Md. at 460. "This is because in most cases, it is unlikely that a manufacturer of a defective product 'would specifically intend to harm a particular consumer.'" *Luminace Solar Md., LLC* v. *Tigo Energy, Inc.*, Civil Action No. GLR-23-1606, 2024 WL 1283329, at *7 (D. Md. Mar. 26, 2024) (quoting *Zenobia*, 325 Md. at 461). *Zenobia* established a two-part test for punitive damages that requires a plaintiff to plead, and ultimately prove by clear and convincing evidence, that the defendant (1) possessed "actual knowledge of the defect" and (2) acted with "conscious or deliberate disregard of the foreseeable harm resulting from the defect." 325 Md. at 462. The knowledge component requires "the defendant *actually* knew of the defect and of the danger of the product at the time the product left the defendant's possession or control." *Id.* (emphasis in original). The intent element requires more than "simply the supplying of a defective product." *Mendez*, 2022 WL 2333851, at *3. Thus, allegations that the manufacturer "knew of a product defect and distributed the product anyway" are insufficient. *Id.* at *4. Only if the defendant makes a "bad faith decision . . . to market a product, knowing of the defect and danger," will the plaintiff be able to establish the actual malice necessary to recover punitive damages. *Zenobia*, 325 Md. at 463.

Here, the Stotlers aver in conclusory fashion that Nissan "placed into the stream of commerce a defective Vehicle that was unreasonably dangerous when it left Nissan's control." ECF No. 1 ¶ 35. But the Stotlers fail to plead that Nissan had actual knowledge of the alleged defect at the time of sale. The Stotlers also do not allege that Nissan made the necessary "bad faith decision . . . to market" the Vehicle "knowing of the defect and danger, in conscious or deliberate disregard of the threat to the safety of the consumer." *Zenobia*, 325 Md. at 463. Instead, the Stotlers focus on Nissan's asserted actual knowledge after the sale when the Vehicle was in the Stotlers' possession and control. ECF No. 1 at 11–12. For example, the Stotlers allege that on August 26, 2024, an individual at a Nissan dealership in West Virginia believed the Vehicle was "dangerous." ECF No. 1 ¶ 7. The Stotlers further rely on the volume of NissanConnect telematics warnings, dealership repairs and service records, and Nissan's alleged unresponsiveness to the Stotler's requests after the occurrence. *Id.* at ¶¶ 7–10, 14 & pp. 11–12. None of these allegations, if proven, support an award of punitive damages because they do plausibly allege that Nissan "*actually* knew of the defect and of the danger of the product at the time the product left the defendant's possession or control," and that, "armed with this knowledge," Nissan "consciously or deliberately disregarded the potential harm to consumers." *Bowden* v. *Caldor, Inc.*, 350 Md. 4, 24 (1998) (emphasis in original) (quoting *Zenobia*, 325 Md. at 462-463). "Maryland law has limited the availability of punitive damages to situations in which the defendant's conduct is characterized by *knowing and deliberate wrongdoing*." *Ellerin* v. *Fairfax Sav., F.S.B.*, 337 Md. 216, 228 (1995) (emphasis added). The Stotlers do not plausibly allege any such misconduct on the part of Nissan. The Stotlers contend that Nissan's failure to "remove the Vehicle from service" plausibly alleges Nissan's deliberate disregard of a potential danger. Yet, this contention fails to recognize that the Stotlers, and not Nissan, had possession and control of the Vehicle during the relevant timeframe. ECF No. 17-1 at 5, 10–11.

In their opposition, the Stotlers posit that Nissan's "continuing post-duty to warn" supplies a basis for punitive damages. ECF No. 17-1 at 11. To be sure, "a manufacturer of a defective product has a duty to warn of product defects which the manufacturer discovers after the time of sale." *Zenobia*, 325 Md. at 446. Nevertheless, the Stotler's duty-to-warn argument cannot save their request for punitive damages. First, the Stotlers do not allege that Nissan defaulted on its duty to warn in their Complaint. *See generally* ECF No. 1. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mylan Lab'ys, Inc.* v. *Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quotation marks and citation omitted). Second, the cases upon which the Stotlers rely to assert that allegations of prior complaints and knowledge of defects plausibly allege actual malice are distinguishable. ECF No. 17-1 at 3 (citing *Marion*, 792 F. Supp. 3d 629; *Luminace Solar Md., LLC*, 2024 WL 1283329). The operative pleadings in the cited cases plausibly alleged that the defendant had received prior complaints of the same alleged defect and yet the defendants deliberately disregarded those complaints and either continued to place the allegedly defective products into the stream of commerce or failed to warn the plaintiff of potential danger from the alleged defect. *Marion*, 792 F. Supp. 3d at 634; *Luminace Solar Md., LLC*, 2024 WL 1283329, at *7-8. In contrast, here, the Complaint is replete with allegations that Nissan advised the Stotlers of the existence of issues with the Vehicle, telling them, for example, that the Vehicle was "dangerous" and sending "more than thirty . . . 'veh. malf.' warnings," including a warning thirteen minutes before the August 11, 2025 occurrence. ECF No. 1 ¶¶ 7–8, 10–11. In sum, the Stotlers do not plausibly allege that Nissan acted with actual malice.

As an alternative to dismissal of their punitive damages request, the Stotlers seek leave to amend their Complaint. ECF No. 17-1 ¶¶ 43–49. Federal Rule of Civil Procedure 15 provides that before trial, a district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Court of Appeals for the Fourth

Circuit has instructed that "[i]t is this Circuit's policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *Galustian* v. *Peter*, 591 F.3d 724, 729 (4th Cir. 2010). "Accordingly, leave to amend should be denied only if 'prejudice, bad faith, or futility' is present." *Ellis* v. *Life Bridge Health, Inc.*, Civil Action No. SAG-26-2176, 2026 WL 2149433, at *1 (D. Md. July 27, 2026) (quoting *Johnson* v. *Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). "Leave to amend would be futile when an amended complaint could not survive a motion to dismiss for failure to state a claim." *United States Equal Emp. Opportunity Comm'n* v. *Koerner Mgmt. Grp., Inc.*, Civil Action No. GLR-21-652, 2021 WL 4255374, at *1 (D. Md. Sept. 17, 2021). "Yet the Court need not apply the Rule 12(b)(6) standard when determining whether leave to amend would be futile. The Court applies a much less demanding standard: whether 'the proposed amendment is clearly insufficient or frivolous on its face.'" *Aura Light US Inc.* v. *LTF Int'l LLC*, Civil Action No. GLR-15-3198, 2017 WL 2506127, at *5 (D. Md. June 8, 2017) (quoting *Johnson*, 785 F.2d at 510).

Here, the Stotlers offer "proposed clarifying allegations" in their opposition to demonstrate that their Complaint is "readily curable and that amendment would not be futile." ECF No. 17-1 at 13–14. The proffered allegations, which relate to Nissan's knowledge and actions after the Vehicle left its possession and control, merely restate the allegations set forth in the Complaint, which the undersigned finds inadequate to support punitive damages. They are therefore "clearly insufficient" to plausibly allege actual malice. Nevertheless, the undersigned will grant the Stotlers leave file a motion to amend in which they may explain the nature of their proposed amendments and why they would not be futile.

## III. CONCLUSION

For the foregoing reasons, Nissan's motion is granted. A separate Order follows.

Date: September 25, 2026

/s/
Erin Aslan
United States Magistrate Judge